UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| L.P. and P.P., individually and as parents and legal guardians of S.P., | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 10-40190-FDS |
| v. | ) ) | |
| LONGMEADOW PUBLIC SCHOOLS, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

MEMORANDUM AND ORDER ON
PLAINTIFFS' MOTION FOR ATTORNEY FEES

**SAYLOR, J.**

This is an action for attorney fees brought pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1415. Plaintiffs, parents of a minor child S.P., filed a claim before the Bureau of Special Education Appeals ("BSEA"), alleging that defendant Longmeadow Public Schools developed individualized education programs ("IEPs") for S.P. that were not appropriate to his needs and that were not properly implemented. In reviewing the BSEA's decision, this Court ruled that plaintiffs received favorable relief from the BSEA and were entitled to an attorney fee award for certain fees.

Plaintiffs now request $42,378.25 in fees. Longmeadow Public Schools opposes plaintiffs' motion for fees as excessive, and asks the Court to award no more than $9,587.50. For the reasons set forth below, plaintiffs' motion will be granted in part and denied in part, and the Court will award attorney fees in the amount of $13,285.

**I.      Background**

Plaintiffs L.P. and P.P. are the parents of a teenage child, S.P. (AR at 548). S.P. is disabled within the meaning of the Individuals with Disabilities Education Act ("IDEA"). S.P. is therefore entitled to a "free appropriate public education" ("FAPE") under the IDEA. *See, e.g., Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 987 (1st Cir. 1990).

The IEP is the primary safeguard for assuring the provision of FAPE to disabled children. "Each IEP must include an assessment of the child's current educational performance, must articulate measurable educational goals, and must specify the nature of the special services that the school will provide." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005); *see Roland M.*, 910 F.2d at 987 (citing 20 U.S.C. § 1401(19); 34 C.F.R. § 300.346). A parent of a disabled child who wishes to contest an IEP may request an impartial hearing, to be convened by the state. 20 U.S.C. § 1415(f)(1)(A).

S.P. has been enrolled in Longmeadow schools since he began attending kindergarten in 2001. (AR at 550-51). In July 2007, plaintiffs first requested an administrative hearing before the BSEA, (*Id.* at 554), in order to challenge S.P.'s last accepted IEP. Plaintiff's request for a hearing was later amended on March 22, 2010, to include complaints about the appropriateness of four other IEPs, as well as a complaint that Longmeadow had not properly implemented S.P.'s last accepted IEP. A hearing was held before the BSEA for six days between April 27 and May 4, 2010.[1]

In its final order, the BSEA ruled generally in favor of Longmeadow with respect to the

---

[1] Significant procedural developments took place between the initial request for an administrative hearing in 2007 and the hearing itself. For more details on the procedural background, see this Court's Memorandum and Order on Cross-Motions for Summary Judgment.

appropriateness of the IEPs. It did, however, award compensatory services because the school had not adequately implemented some of its obligations. Plaintiffs filed an action in this Court for review of the decision, insofar as it was adverse to them, and for an award of attorney fees under the statute's fee-shifting provision. The Court ruled that plaintiffs were entitled to an attorney fees award because they were the "prevailing party" in the matter before the BSEA on the claim for compensatory services. However, the Court noted that the amount of a fee award in this case would take into account that plaintiffs did not prevail on a majority of their claims. The Court instructed the parties to identify what proportion of fees are attributable to implementation claims that resulted in compensatory services award.

## II.     Analysis

### A.     Legal Standard

The IDEA includes a fee-shifting provision that allows judges, in their discretion, to award reasonable attorney fees to prevailing parties in IDEA actions. 20 U.S.C. § 1415(i)(3)(B). In the First Circuit, a reasonable fee is typically determined through the lodestar method, which involves multiplying the number of hours productively spent by a reasonable hourly rate. *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Courts may adjust the hours claimed to eliminate any time that was unreasonably, unnecessarily, or inefficiently devoted to the case. *Torres-Rivera*, 524 F.3d at 336. Under the IDEA, a reasonable hourly rate is based on "rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C).

When a plaintiff prevails on some, but not all, claims, a court may limit reimbursement

for time spent litigating failed claims. *See Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 298 (1st Cir. 2001); *see also Torres-Rivera*, 524 F.3d at 336. If failed claims are unrelated to successful ones, fees should not be awarded for work on the failed claims. *Lipsett v. Blanco*, 975 F.2d 934, 940 (1st Cir. 1992). However, if "the losing claims included 'a common core of facts' or were 'based on related legal theories' linking them to the successful claim," a court may award compensation for work on both the failed and successful claims. *Lipsett*, 975 F.2d at 940.

### B.  Plaintiffs' Fee Request

Plaintiffs request $42,378.25 in legal fees relating to their implementation claims that resulted in a compensatory services award. This requested sum is based on (1) $13,285 in attorney fees for issues that plaintiffs contend were solely related to implementation claims, and (2) $29,093.25 for "various issues." (Pl. Mot. for Att'y Fees at 3-4). Plaintiffs assert that the case involved a common set of "core facts" that makes it impossible to completely separate out the time spent on implementation claims that resulted in compensatory services awards. (*Id*. at 3). Further, plaintiffs request attorney fees for legal tasks that are common to any hearing or litigation, such as preparing for hearings, attending hearings, and drafting legal briefs. (*Id.*).

In support of their request, plaintiffs have submitted two attorney affidavits. (Pl. Mot. for Att'y Fees Ex. A, B). The first of these affidavits, submitted by Sarah A. Ornelas, sets forth the billing history report for the case. (Pl. Mot. for Att'y Fees Ex. A).[2] It attempts to separate into two charts the time for which plaintiffs request reimbursement of attorney fees. The first chart documents the time that plaintiffs contend was expended solely on implementation claims that

---

[2] The second affidavit, submitted by Daniel J. O'Connell, simply states that he provided representation to plaintiffs in this matter and that Attorney Ornelas' affidavit appears true and accurate.

resulted in an award of compensatory services. (*Id*. at 2-5). In total, this chart covers tasks amounting to $13,285 in attorney fees. (*Id*. at 5). The second chart documents the time that plaintiffs contend included the litigation of both claims for compensatory services and other requested relief. (*Id.* at 6-11). In total, this chart covers tasks amounting to $29,093.25 in attorney fees. (*Id*. at 11).

Defendant contends that the requested sum is excessive, and urges the Court to award no more than $9,587.50. Defendant provides several reasons why plaintiffs should not receive the full amount requested.

First, defendant asserts that the issue of implementation was separable from other issues raised, and should have been fully separated. Defendant asserts that implementation focuses on whether the services proposed in the last accepted IEP were actually provided, whereas the FAPE issues on which plaintiffs did not prevail focus on whether the contents of the IEP were appropriate. (Opp. at 4). Where plaintiffs have not specified the common set of core facts involved in both sets of issues, defendants suggest that plaintiffs are only entitled to recover fees related to time spent solely on implementation.

Second, defendant asserts that fees claimed for time spent solely on implementation should be reduced. Defendant contends that these fees include tasks that were not solely dedicated to implementation. Defendant requests that a proportionality analysis be employed to reduce the requested fee award in all entries that do not reflect work solely related to implementation.

Third, defendant contends that plaintiffs are not entitled to the fees listed in the second chart in the Ornelas affidavit, which plaintiffs suggest are "common to any hearing or litigation."

Defendant asserts that such fees are to be granted only in cases where hours cannot be divided on a claim-by-claim basis. Because plaintiffs were able to separate time that they claim was spent solely on this issue of implementation, defendants object to the award of any additional fees in this case.

A request for attorney fees should not open the door to a second major litigation. *Hensley v. Echerhart*, 461 U.S. 424, 437 (982). The First Circuit has indicated that district courts are not required to set forth hour-by-hour analyses of fee requests, *United States v. Metropolitan Dist. Comm'n*, 847 F.2d 12, 16 (1st Cir. 1988); indeed, district courts "should not attempt to parse out work on unsuccessful claims hour-by-hour where it would be an exercise in futility." *Alfonso v. Aufiero*, 66 F. Supp. 2d 183, 194 (D. Mass. 1999) (citing *Lipsett v. Blanco*, 975 F.2d 934, 940-41 (1st Cir. 1992) (internal quotations omitted). Accordingly, this Court will not attempt to parse out how each entry in the Ornelas affidavit connects to implementation claims where such a connection is not made clear in plaintiffs' records.

Plaintiffs' counsel has submitted two separate time charts: (1) an itemized listing of the tasks that she contends were solely related to issues involving implementation claims that resulted in an award of compensatory services, and (2) an itemized listing of the tasks that she contends were related both to issues involving implementation claims and to other claims.

Many of the items in the first chart make specific reference to implementation or compensatory services. For instance, the chart includes 1 hour during which counsel "[p]repared calculations for missed services," 3 hours during which counsel "reviewed materials provided by client re: compensatory services," and 0.4 hours during which counsel "[s]ent and received various emails from client re: missed services and proposed program." (*Id.* at 3). As to these

items and all other items that specifically reference implementation or services, counsel has clearly provided sufficient documentation of the specific tasks involved to establish their connection to implementation issues. Plaintiffs are entitled to an award of fees for this time.

Many of the entries in the first chart, however, are significantly less descriptive of the connection between the task and plaintiffs' successful implementation claims. For example, Ornelas's affidavit includes at least ten items between the dates of May 19 and June 11, 2010 that involve preparation of counsel's closing brief. (*Id*. at 3-4, 9). Of these ten items, five are included in the first chart (related solely to implementation), and five are included in the second chart (related both to implementation and other claims). (*Id*.). There is no discernible difference between the descriptions of these items, and no means for this Court to determine whether these items have been correctly categorized. Similarly, Ornelas asserts that she spent approximately 5.6 hours between September 13 and September 16, 2010 drafting the appellate complaint for attorney fees. (*Id*. at 4). Because this entry is listed in the chart of tasks related solely to implementation, plaintiffs appear to contend that the entire block of time was devoted to that topic. However, plaintiffs' complaint for attorney fees did not focus exclusively on implementation; the complaint also appealed the BSEA decision as a whole. It is unclear how counsel can contend that this entire time related solely to issues of implementation.

Nonetheless, the Court finds that plaintiff has provided sufficient documentation of the tasks set forth in the first chart to suggest that these items relate at least in part to issues of implementation and compensatory services. The chart accounts for time spent on correspondence, research, BSEA hearing preparation, BSEA closing argument preparation, and federal court appeal preparation. *(Id*. at 2-5). Implementation issues were necessarily involved

in all of these tasks, and it is reasonable to infer that this work related to implementation at least in part. Where failed and successful claims are related, this Court has discretion to award compensation for work that relates to both. *See e.g., Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008). Accordingly, the Court will grant legal fees requested by plaintiffs in the first chart, for a total fee of $13,285.

In contrast, plaintiffs have not provided sufficient documentation to support any award for tasks set forth in the second chart. Plaintiffs allege that these tasks involved a common set of "core facts" that created an insurmountable obstacle to separating out those items relating to implementation and compensatory services from the rest. (Pl. Mot. for Att'y Fees Ex. A). Ornelas's affidavit states that the facts and circumstances in the case were "so intertwined that it was not possible . . . to distinguish the portion of the claim that I was preparing for each time that I performed work on this file." (*Id.* at 6). Yet plaintiffs make no attempt to specify the "core facts" involved in the case, nor do they specify what "various issues" are considered so intertwined with the issue of implementation as to be inextricable.

Defendant correctly asserts that preparation involving the implementation issue should have been clearly separable from preparation involving other issues. FAPE issues focus on whether the services, goals, and other specifications set forth in an IEP were appropriate, given the student's needs. In contrast, implementation focuses simply on whether the services proposed in an IEP have actually been provided. In other words, FAPE issues involve what should have been done, implementation issues involve what actually was done. The Court is hard-pressed to imagine the facts and circumstances that render the legal tasks associated with these very different analyses completely indistinguishable.

A fee applicant ultimately bears the burden of establishing entitlement to an award and providing sufficient documentation of appropriate hours expended. *Hensley*, 461 U.S. at 437. Here, neither counsel's affidavit nor plaintiffs' brief provides sufficient description of the items listed in plaintiffs' second chart to allow the Court to determine what proportion of the fees are attributable to implementation claims that resulted in compensatory services award. Accordingly, plaintiffs' request for an additional $29,093.25 will be denied.

**IV.     Conclusion**

For the foregoing reasons, plaintiffs' motion for attorney fees is GRANTED in part and DENIED in part.  Plaintiff is awarded attorney fees in the amount of $13,285.

**So Ordered.**

                                             /s/ F. Dennis Saylor
                                             F. Dennis Saylor IV

Dated:  October 18, 2012                United States District Judge